1  EASTERN DISTRICT OF NEW YORK
   ------------------------------------x
2  UNITED STATES OF AMERICA

3                                          Docket No.:
                                           10 CR 019(S-1)
4          versus
                                           U.S. Courthouse
5  ZAREIN AHMEDZAY,                        225 Cadman Plaza East
                                           Brooklyn, NY 11201
6                    Defendant.
   ------------------------------------x
7                                          April 23, 2010
                                           1:30 p.m.
8

9        Transcript of Criminal Cause for Pleading

10 Before:   HONORABLE STEVEN GOLD,
                              United States Magistrate Judge
11

12                       APPEARANCES

13 For the Government:            BENTON J. CAMPBELL, ESQ.
                                  United States Attorney
14                                Eastern District of New York
                                  271 Cadman Plaza East
15                                Brooklyn, New York 11201
                                  BY:  JEFFREY KNOX, ESQ.
16                                     JAMES LOONAM, ESQ.
                                       BERIT BERGER, ESQ.
17                                     Assistant U.S. Attorneys

18

19 For the Defendant:            MICHAEL MARINACCIO, ESQ.

20

21

22 Court Reporter:               LISA SCHMID, CCR, RMR
                                 Official Court Reporter
23                               225 Cadman Plaza East
                                 Brooklyn, New York 11201
24                               Phone:  718-613-2644

25 Proceedings recorded by mechanical stenography.  Transcript
   produced by computer-aided transcription.

```
 1                  THE COURT:  Good afternoon, everybody.  Please have a

 2       seat.

 3                  THE CLERK:  Criminal cause for a guilty plea, United

 4       States of America versus Zarein Ahmedzay, Docket Number 10 CR

 5       019.

 6                  Counsel, please state your appearances for the record.

 7                  MS. BERGER:  Good afternoon, Your Honor.  Berit

 8       Berger, Jeffrey Knox and James Loonam for the Government.

 9                  MR. MARINACCIO:  Good afternoon, for the Government --

10       for the defendant, rather, Michael Marinaccio.

11                  THE COURT:  Good afternoon.

12                  Mr. Ahmedzay, do you speak and understand English?

13                  THE DEFENDANT:  Yes, I do.

14                  THE COURT:  The reason you're here today is that your

15       attorney has indicated that you wish to enter pleas of guilty

16       to Counts 1, 2 and 3 --

17                  MS. BERGER:  Yes, your Honor.

18                  THE COURT:  -- of the first superseding indictment in

19       this case.

20                  Before I may hear any plea of guilty that you wish to

21       offer, I need to make certain that you understand that I'm not

22       the judge who's presiding over your case.  That judge is United

23       States -- Chief United States District Judge Dearie.

24                  Judge Dearie is the one -- let me make sure -- Chief

25       Judge Dearie is the one who is going to decide whether any
```

1    pleas of guilty you offer today should be accepted, and if they

2    are, how your sentence should be determined.

3           I'm a magistrate judge.  I'm not a district judge like

4    Judge Dearie.  I do not have the authority under the law to

5    take those steps.  If you wish, you have the absolute right to

6    present your pleas of guilty to Judge Dearie.

7           If that is your choice, there will be no prejudice to

8    you.  You will be permitted to plead guilty on the same terms

9    and conditions being offered to you today on another date that

10   is convenient to Chief Judge Dearie.

11          In the alternative, though, if I have your consent and

12   agreement, I do have the authority to be the judge who listens

13   to your guilty plea.  I am not authorized to formally accept it

14   or to decide your sentence, but I am authorized to hear it, if

15   you agree to present it to me.

16          If you do agree to proceed before me, I will arrange

17   for this entire proceeding to be transcribed, so that Judge

18   Dearie will have a complete record of everything you and I have

19   said to each other before he's called upon to decide whether

20   your plea should be accepted or how your sentence should be

21   calculated.  Do you understand everything I've said to you so

22   far?

23          THE DEFENDANT:  Yes, I do.

24          THE COURT:  Do you wish to give up your right to have

25   Judge Dearie be the judge who hears your plea, and do you agree

1    to present your plea to me instead?

2           THE DEFENDANT:  Yes.

3           THE COURT:  Are you making this decision voluntarily

4    and of your own free will?

5           THE DEFENDANT:  Yes, I am.

6           THE COURT:  Has anybody threatened you or promised you

7    anything in order to get you to agree to this?

8           THE DEFENDANT:  No.

9           THE COURT:  Can you recognize this form from where

10   you're sitting?  If not, we'll bring it over to you.

11          THE CLERK:  (Handing.)

12          THE DEFENDANT:  (Peruses document.)

13          THE COURT:  Do you see the form I've handed to you?

14          THE DEFENDANT:  Yes.

15          THE COURT:  Did you review this form carefully with

16   your lawyer?

17          THE DEFENDANT:  Yes, I did.

18          THE COURT:  Did you sign it?

19          THE DEFENDANT:  Yes.

20          THE COURT:  Did you understand what you signed?

21          THE DEFENDANT:  Yes, I did.

22          THE COURT:  Mr. Marinaccio, do you know of any reason

23   why your client should not consent to proceed before me for

24   these purposes?

25          MR. MARINACCIO:  No, Your Honor.

1          THE COURT:  I find the consent of the defendant

2    voluntary and knowing.  I'm going to add my endorsement to the

3    consent form to reflect my finding.

4          Mr. Ahmedzay, before I may recommend to Judge Dearie

5    that he accept any pleas of guilty that you might offer today,

6    I'm going to have to ask you a lot of questions.

7          The questions are very important.  They're designed to

8    make sure that you understand what a serious decision it is

9    you're about to make.  They're also designed to protect the

10   Court and the prosecution by creating a record that will show

11   that I explained to you what your rights are.  You told me you

12   understood those rights, and you agree to surrender those

13   rights.

14         THE DEFENDANT:  That's correct.

15         THE COURT:  Once that happens, any pleas of guilty you

16   offer will be legally valid and permanently binding upon you.

17   I'm therefore urging you to listen carefully to the questions.

18         And if I ask you something and you're not sure you

19   understand it, don't answer it.  Tell me you're confused by the

20   question.

21         THE DEFENDANT:  (Nods head affirmatively.)

22         THE COURT:  And I will try to rephrase it for you.

23         THE DEFENDANT:  (Nods head affirmatively.)

24         THE COURT:  If you want to stop at any time because

25   you want to ask me a question or you would like the opportunity

1    to confer privately with your lawyer, just tell me and I will

2    give you that opportunity.  Is all of this clear to you?

3              THE DEFENDANT:  Yes, it is.

4              THE COURT:  It is so important you tell the truth

5    today, that I'm going to direct that you be placed under oath

6    before we proceed.

7              (Defendant sworn.)

8              THE DEFENDANT:  Yes, I do.

9              THE COURT:  You may be seated.

10             State your full name for the record.

11             THE DEFENDANT:  Zarein Ahmedzay.

12             THE COURT:  How old are you?

13             THE DEFENDANT:  I'm 25 years old.

14             THE COURT:  How far did you go in school?

15             THE DEFENDANT:  Junior year of college.

16             THE COURT:  Is English your native language?

17             THE DEFENDANT:  Second language.

18             THE COURT:  Are you having any difficulty

19   understanding me as I speak to you in English today?

20             THE DEFENDANT:  No, I don't.

21             THE COURT:  Counsel, have you had any difficulty

22   communicating with your client in English?

23             MR. MARINACCIO:  No, Your Honor.

24             THE COURT:  Mr. Ahmedzay, have you now or have you

25   recently been under the care of a doctor, psychologist or other

1    health care professional for any mental, emotional or physical

2    problems?

3              THE DEFENDANT:  No, I'm not.

4              THE COURT:  In the last 24 hours, have you taken any

5    narcotics, drugs or medicine, pills or alcohol?

6              THE DEFENDANT:  I have not.

7              THE COURT:  Have you ever in your life been

8    hospitalized or treated for drug or alcohol abuse or mental or

9    emotional problems?

10             THE DEFENDANT:  No.

11             THE COURT:  Is your mind clear today?

12             THE DEFENDANT:  Yes, it is.

13             THE COURT:  Do you feel healthy, focused and alert?

14             THE DEFENDANT:  Yes, I do.

15             THE COURT:  Do you understand everything that's

16   happening here?

17             THE DEFENDANT:  Yes.

18             THE COURT:  Mr. Marinaccio, are you appointed or

19   retained?

20             MR. MARINACCIO:  I am appointed, Your Honor.

21             THE COURT:  Have you discussed the matter of pleading

22   guilty carefully with your client?

23             MR. MARINACCIO:  Yes, I have.

24             THE COURT:  Does he understand the rights he'll be

25   waiving if he enters a guilty plea?

1          MR. MARINACCIO:  I believe he does, Your Honor.

2          THE COURT:  Is he capable of understanding the nature

3  of this proceeding?

4          MR. MARINACCIO:  I believe he is.

5          THE COURT:  Do you have any doubt about his competence

6  to enter a plea of guilty at this time?

7          MR. MARINACCIO:  None.

8          THE COURT:  Have you alerted him to the maximum

9  sentence and fine that could be imposed, and discussed with him

10  the likely operation of the sentencing guidelines and the terms

11  of his agreement in detail?

12          MR. MARINACCIO:  We have, Judge.

13          THE COURT:  Directing the Government's attention to

14  paragraphs G of each charging paragraph, in paragraph one of

15  the agreement, is it the Government's understanding that the

16  defendant is a citizen of the United States?

17          MR. KNOX:  Yes, Your Honor.

18          THE COURT:  Mr. Ahmedzay, have you had an enough time

19  to review your case very carefully with your lawyer?

20          THE DEFENDANT:  Yes, I have.

21          THE COURT:  Are you satisfied to have Mr. Marinaccio

22  be the attorney who is defending you in this case?

23          THE DEFENDANT:  Yes, I am.

24          THE COURT:  Have you received a copy of the

25  superseding indictment in which the charges against you are set

1   forth in writing?

2           THE DEFENDANT:  Yes, Your Honor.

3           THE COURT:  Have you reviewed that indictment very

4   carefully with your attorney?

5           THE DEFENDANT:  Yes, I have.

6           THE COURT:  In Count 1 of the indictment, you are

7   charged with knowingly, intentionally and without lawful

8   authority conspiring or agreeing to working together with

9   others to use weapons of mass destruction, described more

10  specifically as explosive bombs and devices, against persons

11  and property within the United States, between September of

12  2008 and September of 2009, and in so doing, using email and

13  the Internet, involving yourselves with at least one other

14  person who traveled in interstate or foreign commerce, and

15  planning to engage in activity that would have had an impact on

16  interstate and foreign commerce.

17          Do you understand what you're accused of in Count 1?

18          THE DEFENDANT:  Yes, I do.

19          THE COURT:  In Count 2, you are charged with knowingly

20  and intentionally conspiring or agreeing with others to commit

21  one or more acts outside of the United States that would, if

22  committed in the maritime or territorial jurisdiction of the

23  United States, constitute murder or maiming and, in fact,

24  traveling from Newark Airport to Qatar and Pakistan in August

25  of 2008, as part of that offense.

```
1              Do you understand what you're accused of in Count 2?

2              THE DEFENDANT:  Yes.

3              THE COURT:  In Count 3, you are charged with knowingly

4    and intentionally providing material support and resources,

5    including money, communications equipment and personnel to a

6    foreign terrorist organization, knowing that it was involved in

7    acts of terrorism, between September of 2008 and January 2010.

8              Do you understand what you're accused of in Count 3?

9              THE DEFENDANT:  Yes, sir.  I understand.

10             THE COURT:  You have a right to plead not guilty to

11   those and all of the other charges that are pending against

12   you.  That is your right, even if you've committed these

13   offenses.

14             Every defendant has the right to enter a plea of not

15   guilty, whether he has committed the crimes with which he's

16   been charged or not.  And it is never lying or misleading the

17   Court to plead not guilty.  Is that clear to you?

18             THE DEFENDANT:  Yes, it is.

19             THE COURT:  If you were to plead not guilty, then

20   under the Constitution and laws of the United States, you would

21   be entitled to a speedy and public trial by jury, with the

22   assistance of your attorney, on all of the charges that are

23   pending against you.  Do you understand that?

24             THE DEFENDANT:  Yes, I do.

25             THE COURT:  And at your trial, you would be presumed
```

1    to be innocent.  The prosecution would be required to overcome

2    the presumption of innocence, and to prove that you are guilty

3    by competent evidence and beyond a reasonable doubt.

4              You would have no obligation to prove that you were

5    innocent.  If the prosecution failed to prove that you were

6    guilty beyond a reasonable doubt, then the members of the jury

7    would have the duty to return a verdict of not guilty, and

8    Judge Dearie would instruct them accordingly.  Is that clear to

9    you?

10             THE DEFENDANT:  Yes, it is.

11             THE COURT:  That's why it sometimes happens that

12   juries return verdicts of not guilty, even when the jurors

13   believe the defendant on trial probably did commit the crimes

14   of which he is accused.

15             When a jury returns a not guilty verdict, it doesn't

16   necessarily mean that the jurors believe the defendant to be

17   innocent.  Jurors are obligated by law to find a defendant not

18   guilty, unless convinced beyond a reasonable doubt that he

19   committed the crime of which he is accused.  Is that clear to

20   you?

21             THE DEFENDANT:  Yes, it is.

22             THE COURT:  If you proceeded to trial by pleading not

23   guilty, then during the course of your trial, the prosecutor's

24   witnesses would be required to come into the courtroom and

25   present their testimony against you, right in front of you and

1   your lawyer.

2           Your lawyer would have the right to question the

3   prosecution witnesses on cross-examination.  Your lawyer would

4   have the right to raise objections to evidence that the

5   prosecution attempted to offer against you.  And you and your

6   lawyer, working together, would have the right to call

7   witnesses, present evidence, and make arguments to the jury

8   during the course of your trial.  Do you understand me?

9           THE DEFENDANT:  Yes, I do.

10          THE COURT:  At your trial, you, yourself, would have

11  the right to testify as a witness in your own defense, if that

12  was the choice that you made.  On the other hand, no one could

13  require you to testify at your trial against your will, and

14  that is because the Constitution of the United States provides

15  that no one may be required to say anything that is

16  self-incriminating.

17          If you decided that you did not want to testify as a

18  witness in your own defense at your trial, Judge Dearie would

19  instruct the jurors that they could not take your decision not

20  to testify into account or hold it against you in any way when

21  they decided what their verdict should be.  Is that clear to

22  you?

23          THE DEFENDANT:  Yes, it is.

24          THE COURT:  On the other hand, if you offer a plea of

25  guilty in my courtroom this afternoon and Chief Judge Dearie

1    rules that your guilty pleas should be accepted, you will, as a

2    result, have surrendered your Constitutional right to a trial

3    and all the other rights that I have been describing to you

4    today.

5            There will be no further trial of any kind in your

6    case.  You will have no right to appeal from the judgments of

7    conviction that will be entered against you.  Judge Dearie will

8    essentially convict you, find you guilty based upon the

9    admissions that you make in my courtroom this afternoon, and

10   that will free the prosecution of its responsibility to prove

11   what you did.  Is that clear?

12           THE DEFENDANT:  Yes, it is.

13           THE COURT:  If you proceeded to trial and you were

14   found guilty by the verdict of a jury, you would then have a

15   right to ask a higher court, a court we call the Court of

16   Appeals, to review the legality of all of the proceedings that

17   led up to your conviction.

18           But when you enter a plea of guilty, your conviction

19   is based upon the words that you, yourself, decided to speak

20   and under that circumstance, there is no appeal from the

21   judgment of guilt that is entered as a result.  Is that clear?

22           THE DEFENDANT:  Yes, it is.

23           THE COURT:  If you plead guilty, I'm going to have to

24   ask you questions about what activities you engaged in that

25   make you guilty of the offenses described in your agreement.

1    I'm going to ask you those questions, so that Judge Dearie and

2    I can be satisfied that your pleas of guilty are based upon

3    facts that truly occurred.

4         You do not have to answer my questions unless you wish

5    to proceed with your guilty plea.  But if you do answer my

6    questions, and in doing so, you admit your involvement in the

7    crimes with which you have been charged, you will, as a result,

8    be giving up your Constitutional right not to say anything that

9    is self-incriminating.  Do you understand that?

10        THE DEFENDANT:  Yes, I do.

11        THE COURT:  Do you still wish to give up your right to

12   trial and all of the other rights that I have been describing

13   to you today?

14        THE DEFENDANT:  Yes.

15        THE COURT:  I understand you're making this decision

16   pursuant to a written agreement that you entered into with the

17   prosecution.  That agreement has been marked as Court's Exhibit

18   1, and I'm going to ask you to look at it with your lawyer

19   right now.

20        THE CLERK:  (Handing.)

21        THE DEFENDANT:  (Peruses document.)

22        THE COURT:  Mr. Ahmedzay, do you recognize the

23   document your lawyer is showing you, Court's Exhibit 1?

24        THE DEFENDANT:  Yes, I do.

25        THE COURT:  Did you sign the final page?

1               THE DEFENDANT:  Yes.

2               THE COURT:  Before you signed it, did you read it?

3               THE DEFENDANT:  Yes, I did.

4               THE COURT:  Did you go over it carefully with your

5     lawyer?

6               THE DEFENDANT:  Yes, I did.

7               THE COURT:  Did you understand what you signed?

8               THE DEFENDANT:  Yes.

9               THE COURT:  Is everything in it clear to you?

10              THE DEFENDANT:  Yes, it is.

11              THE COURT:  Does it contain a full and accurate

12    statement --

13              THE DEFENDANT:  Yes.

14              THE COURT:  -- of everything you and the Government

15    have agreed to concerning your case?

16              THE DEFENDANT:  Yes, Your Honor.

17              THE COURT:  Has anyone promised you anything in return

18    for pleading guilty that's not written down in that document?

19              THE DEFENDANT:  No.

20              THE COURT:  May I have it back, please?

21              THE CLERK:  (Handing.)

22              THE COURT:  We have already been over this afternoon

23    in this proceeding the three charges that the agreement states

24    you intend to plead guilty to.  Do you have those charges

25    clearly in your mind?

1          THE DEFENDANT:  Yes.

2          THE COURT:  I need to review with you the penalties

3     you face if you decide to go forward with your plea of guilty.

4          In Count 1, in which you are accused of conspiring to

5     use weapons of mass destruction, the law you were accused of

6     breaking authorizes a prison sentence as long as the rest of

7     your life.  Is that clear?

8          THE DEFENDANT:  Yes, it is.

9          THE COURT:  In addition, the law authorizes a term of

10    supervised release that could be as long as the rest of your

11    life.  Is that clear?

12         THE DEFENDANT:  Yes.

13         THE COURT:  Supervised release is a period time that

14    will only begin to run if and when you are released from

15    prison, at the end of your sentence.

16         At that point, you will be released from physical

17    custody, but you will not be completely free, because you will

18    be subject to the rules of supervised release.  There are so

19    many of those rules that I cannot list them all for you.

20         I can tell you that they will include but not be

21    limited to restrictions on your right to travel freely,

22    requirements that you regularly report to a probation officer,

23    that you answer your probation officer's questions honestly and

24    follow his or her instructions carefully, and that you commit

25    no new crimes whatsoever.

```
 1              If you break any supervised release rule, you could be

 2    arrested, brought back before this Court, and sent back to

 3    prison for up to five years, with no credit for the time you

 4    spent serving your original sentence in custody, and no credit

 5    for the time you spent with your freedoms restricted while on

 6    supervised release.  Is that clear?

 7              THE DEFENDANT:  Yes, it is.

 8              THE COURT:  You could be fined as much as $250,000,

 9    and required to make restitution in an amount determined by the

10    Court, if there is a finding that leads to a restitution award.

11    Is that clear?

12              THE DEFENDANT:  Yes, it is.

13              THE COURT:  You will be subjected to a -- you will be

14    required to pay, excuse me, a one hundred dollar special

15    assessment at or about the time you are sentenced with respect

16    to Count 1.  Is that clear?

17              THE DEFENDANT:  Yes, it is.

18              THE COURT:  In Count 2, you are charged with

19    conspiring to commit a murder in a foreign country.  Do you

20    have that charge clearly in your mind?

21              THE DEFENDANT:  Yes.

22              THE COURT:  The penalties you face with respect to

23    Count 2 are, first, a second term that could be as long as the

24    rest of your life.  Do you understand?

25              THE DEFENDANT:  Yes.
```

```
 1                THE COURT:  A second term of supervised release that

 2    could be as long as the rest of your life, with an additional

 3    five years in prison, should you be found to have violated the

 4    conditions of your supervised release.  Do you understand?

 5                THE DEFENDANT:  Yes.

 6                THE COURT:  A second fine of $250,000, and order of

 7    restitution.  Do you understand?

 8                THE DEFENDANT:  Yes.

 9                THE COURT:  And a second special assessment of one

10    hundred dollars will be imposed on Count 2. Is that clear?

11                THE DEFENDANT:  Yes.

12                THE COURT:  On Count 3, in which you are charged with

13    providing material support to a foreign terrorist organization,

14    you could be sentenced to prison for up to 15 years.  Is that

15    clear?

16                THE DEFENDANT:  Yes, it is.

17                THE COURT:  A third term of supervised release that

18    could be as long as the rest of your life could be imposed on

19    Count 3.  Is that clear?

20                THE DEFENDANT:  Yes, it is.

21                THE COURT:  A term of incarceration of up to two years

22    for what would now be a total exposure of 12 years of

23    imprisonment for violating supervised release could be imposed

24    on Count 3.  Is that clear?

25                THE DEFENDANT:  Yes.
```

1          THE COURT:  A third fine of $250,000, for a total fine

2    exposure of three-quarters of a million dollars, could be

3    imposed on Count 3.  Is that clear?

4          THE DEFENDANT:  Yes.

5          THE COURT:  A restitution order could be imposed if

6    the appropriate findings are made by Judge Dearie.  Is that

7    clear?

8          THE DEFENDANT:  Yes.

9          THE COURT:  And finally, a third one hundred dollar

10   special assessment will be imposed on Count 3.  Is that clear?

11         THE DEFENDANT:  Yes.

12         THE COURT:  You understand that all three sentences

13   could be consecutive, that is to say that you could be required

14   to finish serving one before you could begin to serve the next.

15   Is that clear to you?

16         THE DEFENDANT:  Yes.

17         THE COURT:  And I want to turn your attention to what

18   we call the Sentencing Guidelines.  Have you had an opportunity

19   to discuss with your lawyer these guidelines, how they operate,

20   and his advice about how they're likely to affect your

21   sentence?

22         THE DEFENDANT:  Yes, I have.

23         THE COURT:  What is the Government's estimate of the

24   guideline range in this case, absent any motion practice?

25         MS. BERGER:  Your Honor, for Count 1, the base offense

```
 1    level would be 42.  The terrorism enhancement would add another
 2    12, for a total offense level of 54.  The defendant would be in
 3    criminal history category of six, which results in a guideline
 4    range of life.
 5           For Count 2, the base offense level would be 33.
 6    There would be a twelve-level terrorism enhancement.  The total
 7    offense level would be 45.  Again, with a criminal history
 8    category of six, that leads to a guideline range of life.
 9           And for Count 3, the base offense level is 26, with a
10    two-level enhancement for explosives, as well as the
11    twelve-level terrorism enhancement.  The total offense level is
12    40, with a criminal history category of six.  That gives us a
13    range of 360 months to life; however, there is a statutory
14    maximum of 15 years for this count.
15           THE COURT:  Thank you.
16           MS. BERGER:  Yes, Your Honor.
17           THE COURT:  The guidelines will be calculated by Chief
18    Judge Dearie.  Once they're calculated, they will provide the
19    Judge with a range of months within which the law will urge
20    your sentence should be set.
21           The prosecutor estimates that Judge Dearie will
22    calculate your guideline range to be life.  And I'm sure that
23    estimate was reached carefully.  But you should be aware that
24    the final decision about the guidelines will be up to Judge
25    Dearie.
```

1          He wouldn't make that decision until he receives a

2     document we call a pre-sentence report.  That report has not

3     yet been written.  Once it is ready, you and your lawyer and

4     the prosecutors will be permitted to read it.

5          You will then have an opportunity to appear before

6     Judge Dearie.  You will have the opportunity to tell Judge

7     Dearie if there is anything in the report that you think is

8     inaccurate.  And then Judge Dearie will calculate the guideline

9     range that he judges is most appropriate and accurately

10    calculated in your case.  Is that clear?

11         THE DEFENDANT:  Yes, it is.

12         THE COURT:  Even after the Judge calculates the

13    guideline range, he retains the authority to decide that a

14    sentence outside the guidelines is most appropriate in your

15    case.  But as you sit here today, no one can guarantee you that

16    he will make such a determination, or that in plainer terms,

17    that he will not conclude that he is bound by a guideline range

18    of life.  Do you understand that?

19         THE DEFENDANT:  Yes, I do.

20         THE COURT:  In fact, if anyone has suggested to you

21    that a motion might be made on your behalf concerning the

22    guidelines range, I need to alert you that there is no

23    guarantee that any such motion will be made or that if it is,

24    that it will be successful.  Is that clear?

25         THE DEFENDANT:  Yes, it is.

```
 1              THE COURT:  Even if the motion is made and is
 2    successful, or if a motion is made and isn't successful, Judge
 3    Dearie retains the discretion to decide what the appropriate
 4    sentence is in your case, and under any circumstance that can
 5    be fathomed by you today, have the authority to imprison you
 6    for the rest of your life.  Do you understand that?
 7              THE DEFENDANT:  Yes, I do.
 8              THE COURT:  No matter what sentence you receive, you
 9    will have no right to withdraw your plea of guilty or to take
10    an appeal because you are dissatisfied with your sentence.  The
11    only rights you will retain after today in terms of appellate
12    rights would be the right to take an appeal, if you believe
13    that Judge Dearie's sentence was unlawfully imposed.  Do you
14    understand that?
15              THE DEFENDANT:  Yes, I do.
16              THE COURT:  Just a minute.  Did you ask me to repeat
17    that?
18              THE DEFENDANT:  You could repeat it.
19              THE COURT:  Judge Dearie has the authority to sentence
20    you to life in prison under any circumstance.  Even if you're
21    dissatisfied with the sentence you receive, that will not be a
22    grounds for withdrawing your guilty plea or challenging the
23    legality of your conviction.
24              If you believe for some reason that your sentence was
25    imposed unlawfully, you would have a right to appeal from that
```

1   sentencing decision, but it would not affect the legal validity

2   of your guilty plea or conviction.  Did you follow at that

3   time?

4           THE DEFENDANT:  Yes.

5           THE COURT:  There is no parole in federal prison.

6   Whatever sentence you receive, you will be not released early

7   from it on parole.  Is that clear to you?

8           THE DEFENDANT:  Yes, it is.

9           THE COURT:  Do you have any questions you would like

10  to ask me or discuss privately with your attorney about the

11  charges against you, the rights you're being asked to waive,

12  the penalties you face, or your agreement with the Government,

13  or anything else?

14          THE DEFENDANT:  No, I don't.

15          THE COURT:  Is everything I've said to you today clear

16  to you?

17          THE DEFENDANT:  Yes, it is.

18          THE COURT:  Are you ready to enter your plea?

19          THE DEFENDANT:  Yes.

20          THE COURT:  Mr. Marinaccio, do you know of any reason

21  why your client should not tender the pleas of guilty to Counts

22  1, 2 and 3, contemplated by his agreement with the prosecution?

23          MR. MARINACCIO:  No, Your Honor.

24          THE COURT:  Mr. Ahmedzay, with respect to Count 1, how

25  do you plead, guilty or not guilty?

```
 1                THE DEFENDANT:  Guilty.

 2                THE COURT:  With respect to Count 2, how do you plead,

 3   guilty or not guilty?

 4                THE DEFENDANT:  Guilty.

 5                THE COURT:  With respect to Count 3, how do you plead,

 6   guilty or not guilty?

 7                THE DEFENDANT:  Guilty.

 8                THE COURT:  Are you making these three pleas of guilty

 9   voluntarily and of your own free will?

10                THE DEFENDANT:  Yes.

11                THE COURT:  Have you been threatened or forced by

12   anyone to tender these guilty pleas?

13                THE DEFENDANT:  No.

14                THE COURT:  Have you been promised anything other than

15   what is written in your agreement with the prosecution in

16   return for your pleas of guilty?

17                THE DEFENDANT:  No.

18                THE COURT:  Have you been promised what sentence Judge

19   Dearie will impose in your case?

20                THE DEFENDANT:  No.

21                THE COURT:  Let's turn our attention then to the

22   indictment.  With respect to Count 1, is there a written

23   allocution, Mr. Marinaccio?

24                MR. MARINACCIO:  Yes, there is, Your Honor.

25                THE COURT:  Mr. Ahmedzay, I am told by your attorney
```

 1    that the statements you're about to make have been prepared in

 2    writing, and I suspect, therefore, that your lawyer has played

 3    a role in crafting the words that are used.  That's perfectly

 4    appropriate.

 5           But it's you who are the one who is under oath and

 6    bears legal responsibility for the accuracy of the statements

 7    you're about to make, not your attorney.  So as long as it is

 8    the truth as you recall it, it's appropriate for you to read

 9    the statement prepared by your lawyer, but if it's inaccurate

10    in any way, you need to tell me so.  Are we clear on that?

11           THE DEFENDANT:  Yes.

12           THE COURT:  What did you do that makes you guilty of

13    the crime with which you're charged in Count 1?

14           MR. MARINACCIO:  Judge, I believe the allocution

15    covers all three counts.

16           THE COURT:  Well then, you're going to have to go

17    especially slow, so I can keep up with you.

18           What did you do that --

19           MR. MARINACCIO:  Should my client stand?

20           THE COURT:  If he's more comfortable rising, that's

21    fine.

22           Mr. Ahmedzay, tell me what you did that makes you

23    guilty of Counts 1, 2 and 3.

24           THE DEFENDANT:  Your Honor, I would like to quote from

25    the Qur'an.

```
 1          THE COURT:  Sure.  We are only interested in right now
 2   are the facts that support your pleas of guilty.
 3          THE DEFENDANT:  It relates to that, Your Honor.
 4          Quote, Verily, Allah has purchased of the believers
 5   their lives and their wealth for the price of Paradise, to
 6   fight in the way of Allah, to kill and get killed.  It is a
 7   promise binding on the truth in the Torah, the Gospel and the
 8   Qur'an, end of quote.
 9          In the summer 2008, Najibullah Zazi, another
10   individual and I took this offer from Allah, and planned to go
11   to Afghanistan to join the Taliban and wage Jihad against the
12   U. S. occupation and the corrupt and apostate Karzai
13   Government, to help overthrow it, and establish the perfect
14   justice of Allah.  This is the Islamic sharia and Calipahate.
15   This meant that we were presented to kill the occupying forces,
16   including the United States military.
17          At the end of the summer, we traveled from Newark
18   Airport to Peshawar, Pakistan.
19          THE COURT:  At the end of the summer of what year?
20          THE DEFENDANT:  Two thousand eight, Your Honor.
21          THE COURT:  I'm sorry, but if the sketcher could
22   please hold -- could you please stop sketching?  Because I
23   can't hear the defendant.
24          At the end of the summer of the 2008, you traveled
25   from where to where?
```

 1          THE DEFENDANT:  From Newark Airport, to Peshawar,

 2   Pakistan.

 3          The third individual and I tried to get into

 4   Afghanistan once we got there, but we were turned back.

 5          A few days later, the three of us met a man in

 6   Peshawar, who recruited us into al-Qaeda, and took us to

 7   Waziristan.

 8          We arrived at a compound in Waziristan, where two

 9   Al-Qaeda leaders showed up to meet with us.  They both --

10          THE COURT:  This is in Pakistan, did you say?

11          THE DEFENDANT:  Yes, this is Waziristan.

12          They spoke English very well.  We told these two

13   individuals that we wanted to wage jihad in Afghanistan, but

14   they said that we would be more useful to them and to the jihad

15   if we returned to New York and conducted operations there.

16          We understood that they wanted us to conduct suicide

17   operations.

18          THE COURT:  What do you mean by "operations"?

19          THE DEFENDANT:  Like, suicide bombing operations.

20          THE COURT:  Go ahead.

21          THE DEFENDANT:  We told these two individuals that we

22   needed time to make a decision.

23          Al-Qaeda arranged for the three of us to receive

24   training at a compound in Warziristan.  We received light

25   weapons training, which are weapons that a person can carry.

1           During the training, we met a third al-Qaeda leader.

2    This individual and one of the two leaders we had already met

3    continued to talk to us, the three of us, about conducting

4    attacks in New York.

5           We discussed the matter amongst ourselves, and we

6    agreed to go forward with the plan.  I personally believed that

7    conducting an operation in the United States would be the best

8    way to end the wars.

9           We then told the al-Qaeda leaders of our decision.  We

10   had more conversations with them about the timing of the attack

11   and possible target locations in Manhattan.

12          They wanted my input because I was familiar with the

13   city.  I was a New York City taxi driver, and knew the city

14   very well.  They said the most important thing was to hit

15   well-known structures and to maximize the number of casualties.

16          At the end of the training, Zazi and I went back to

17   our families in Pakistan and Afghanistan.  The third individual

18   returned to New York.

19          The plan was for Zazi and I to return to Waziristan

20   about a month later, for explosives training.  After I arrived

21   in Afghanistan to my family, I abandoned a plan to attend

22   explosives training, and also doubted whether I would continue

23   with the plan.  Zazi went to al-Qaeda explosives training by

24   himself, and I later looked at his notes.

25          I returned to New York in January 2009.  When I first

1    got to New York, I still had my doubts about continuing forward

2    with the suicide bombing, but a few months later, I changed my

3    mind and committed to going forward with the plan.

4            Around that time, Zazi traveled to New York from

5    Colorado, and the three of us meet in Queens and decided to

6    go -- to continue with the plan to conduct suicide bombings

7    during the month of Ramadan.

8            Zazi would prepare the explosives.  Zazi and I would

9    assemble the devices in New York.  And the three of us would

10   carry out the bombings.  I looked at potential targets in

11   Manhattan.

12           During another trip that Zazi took from New York, we

13   talked more about the attack.  Zazi already had started to

14   experiment with the explosives.  Because of the amount of

15   explosives he believed he could make, Zazi and I decided the

16   three of us would conduct suicide attacks on subway trains,

17   rather than targeting large structures, like a building.  And

18   all three of us agreed to this plan.

19           Zazi drove back to New York in September.  Plan was to

20   finish assembling explosive devices within a few days, and the

21   three of us would conduct the attack as soon as the devices

22   were ready.

23           When Zazi got here -- to New York, that is -- we met

24   in Queens, and he gave me a detonator, explosives, that I

25   understood was a mixture of acetone and peroxide.

 1             We became more and more suspicious of law enforcement.

 2    They were tracking us.  And we decided to abandon the

 3    operation.  We throw away containers of chemicals and other

 4    materials at a location in Queens, and I got rid of the

 5    detonator.  I saw the third individual, and I told him that the

 6    operation was off.

 7             Your Honor, what motivated us was --

 8             THE COURT:  Doesn't matter.  Do you want to finish

 9    your statement?

10             THE DEFENDANT:  Yes.  Um, Your Honor, I strongly urge

11    the American people to stop supporting the war against Islam.

12    And this will be in their own interest.

13             And I'm thankful for myself, that I do not do anything

14    to harm anyone.  But I fear that someone else might do the same

15    thing.

16             And I believe that the real enemies of this country

17    are the ones destroying this country from within.  And I

18    believe these are the special group, the Zionist Jews, I

19    believe, who want a permanent shadow Government within the

20    Government of the United States of America.

21             THE COURT:  Do you have anything else to say about the

22    acts you committed, that is to say what you did?

23             THE DEFENDANT:  No.

24             THE COURT:  Did you finish?  You may be seated.

25             Counsel, I would like to go over the counts and make

1   sure that we have met each of the elements.

2          MR. KNOX:  Yes, Your Honor, and I would like to make

3   two clarifying points with respect to the third count, or would

4   you like me to wait until we get there?

5          THE COURT:  Yes, please.  I'm trying to focus on them

6   one at a time.

7          MR. KNOX:  Okay.  I apologize.

8          THE COURT:  I've been getting distracted.

9          MR. KNOX:  Sorry.

10          THE COURT:  That's all right.

11          With respect to Count 1, I think it's accurate to say

12   that the defendant did describe knowingly and intentionally

13   conspiring to engage in bombings, and in furtherance of that

14   offense, traveling in interstate and foreign commerce, and that

15   he acknowledged doing so between September 2008 and September

16   of 2009, and that some of the meetings and events took place in

17   the Eastern District of New York, in Queens.

18          He did not allocute, as far as I can recall, to

19   subparagraphs one or three of Count 1, that is to say the use

20   of email or internet or -- of course, he didn't allocute to the

21   effect on interstate or foreign commerce, although that could

22   be inferred from a threat to bomb a moving subway train.

23   Although pleaded in the conjunctive, they need only be proved

24   in the disjunctive.  So I don't think there is any need to

25   inquire further with respect to Count 1, but I'll hear it from

1    the Government before we move on.

2         MR. KNOX:  We agree, Your Honor.  And also, we would

3    be prepared to establish at trial in this case that a

4    co-defendant did, in fact, use both email communications and

5    telephone communications in foreign commerce and interstate

6    commerce.

7         THE COURT:  Are you otherwise satisfied with the

8    allocution insofar as Count 1 is concerned?

9         MR. KNOX:  Yes, Your Honor.

10        THE COURT:  With respect to Count 2, we certainly have

11   an acknowledgments by the defendant that he conspired to engage

12   in conduct outside the United States that would constitute

13   murder and maiming, and that he went overseas, as I understood

14   him, for the purpose, in part, of killing American soldiers

15   abroad.  And that he had a meeting in the United States, and

16   boarded a plane in Newark, in furtherance of that offense.

17        I didn't hear anything about venue with respect to

18   Count 2, and I'd like to know, first, if the Government agrees

19   that the substantive elements are satisfied by the allocution

20   and second, what the Government's proof of Eastern District

21   venue would be.

22        MR. KNOX:  Your Honor, we agree with respect to the

23   substantive element, and with respect to the venue element, we

24   would establish at trial that meetings that the defendant and

25   his coconspirators had took place in the Eastern District of

1    New York, specifically in Queens, although it may be worth

2    clarifying that with the defendant now.

3              THE COURT:  These would be before the flight was made?

4              MR. KNOX:  These were before the flight.  This is in

5    the process of making the decision to travel to Pakistan, to

6    wage jihad in Afghanistan against U. S. military and others.

7              THE COURT:  Mr. Ahmedzay, before you left for Pakistan

8    from Newark Airport in August of 2008, did you have meetings

9    with your coconspirators to discuss your plans?

10             THE DEFENDANT:  Yes, I did.

11             THE COURT:  And did those meetings include discussion

12   of, as you describe it, waging jihad, and as I've characterized

13   it, agreeing to kill American soldiers abroad?

14             THE DEFENDANT:  Yes, we did.

15             THE COURT:  Did any of those meetings take place in

16   Queens, New York?

17             THE DEFENDANT:  Yes.

18             THE COURT:  Are you satisfied with respect to Count 2,

19   Mr. Knox?

20             MR. KNOX:  Yes, Your Honor.

21              THE COURT:  Before I begin my discussion with you of

22   Count 3, I know you wanted to say something about that.

23             MR. KNOX:  Yes, Your Honor.

24             THE COURT:  And this is the right time.

25             MR. KNOX:  First of all, with respect to the Count 3,

```
 1    the material support count, and the requirement that the

 2    organization in fact be a designated terrorist organization,

 3    the defendant did allocute that he was aware that the

 4    organization was al-Qaeda.

 5            And at a trial in this matter, if there were to be

 6    trial in this matter, the Government would be prepared to

 7    establish that the organization was, in fact, al-Qaeda.

 8            For example, two of the leaders that tasked the

 9    defendant to carry out attacks in the U. S. included a man by

10    the name of Saleh al Somali, who is the external operations

11    chief for al-Qaeda, and another man named Rashi Rauf, who is a

12    key al-Qaeda operative.

13            My second point, with respect to the knowledge element

14    of material support count, which requires knowing either that

15    the organization is a designated organization or knowing that

16    the organization engages in terrorism or terrorist activity, I

17    believe the knowledge element is self-evident in this case,

18    although it might be worth, in retrospect, thinking about it,

19    clarifying with the defendant that he knew that al-Qaeda

20    engaged in activities that included bombing, targeting

21    civilians.

22            THE COURT:  Did you, in fact, know that, Mr. Ahmedzay?

23            THE DEFENDANT:  Yes, I did.

24            THE COURT:  And you knew that at the time you met with

25    the al-Qaeda operatives?
```

 1          THE DEFENDANT:  Yes.

 2          THE COURT:  Now, with respect to the currency,

 3    communications equipment, personnel provision in the

 4    indictment, is it the Government's theory that by lending

 5    himself to the operation, he provided personnel?

 6          MR. KNOX:  Yes, Your Honor.  He provided himself as

 7    personnel.  In addition, the Government would establish at

 8    trial that he and coconspirators also provided money and

 9    communications equipment.

10          THE COURT:  And would it be -- would I be looking at

11    this same way the Government does, to think that the meetings

12    the defendant has already acknowledged having taken place in

13    Queens before the flight to Pakistan would establish venue for

14    Count 3?

15          MR. KNOX:  I believe, actually, Your Honor, the venue

16    for Count 3 would not include the meetings before the trip,

17    because they did not intend to support Al-Qaeda at the time

18    they left New York.

19          THE COURT:  And it is not a conspiracy charge?

20          MR. KNOX:  It was only once they returned to New York,

21    but once the defendant and coconspirators returned to New York,

22    they did have meetings in the Eastern District about their plan

23    to carry out attacks on behalf of al-Qaeda.

24          THE COURT:  The one in which a detonator was

25    exchanged, according to the defendant?

```
1              MR. KNOX:  Exactly.  That would satisfy the venue

2    provision.

3              THE COURT:  Are you therefore satisfied with the

4    defendant's allocution as to all three counts at this stage?

5              MR. KNOX:  Yes, Your Honor.

6              THE COURT:  Mr. Marinaccio, is there anything you want

7    to add?

8              MR. MARINACCIO:  No, Your Honor.

9              THE COURT:  Based on the information given to me, I

10   find that the defendant is acting voluntarily, that he fully

11   understands his rights and the consequences of his plea, and

12   that there is a factual basis for the plea.

13             I therefore respectfully recommend that Chief United

14   States District Judge Dearie accept the defendant's plea of

15   guilty to Counts 1, 2 and 3 of the superseding indictment in

16   this case.  I believe that sentencing has been set for

17   July 30th, at 10:30 am.

18             Between now and then, the defendant will be

19   interviewed by a probation officer.  The reason for the

20   interview is to help the officer prepare the report that Judge

21   Dearie will rely upon when deciding the defendant's sentence. I

22   therefore urge the defendant to be cooperative with the

23   probation officer.

24             Do I understand that there is an application with

25   respect to the agreement in the case?
```

1          MS. BERGER:  Yes, Your Honor.  The Government would

2    move to seal the plea agreement in this case.  We do so based

3    on the reasons set forth in our letter to the Court.

4          THE COURT:  Yes.

5          The record should reflect that earlier today, the

6    Government submitted a sealed letter application to the Court,

7    proposing that I enter an order under seal, directing that the

8    agreement in this case be filed under seal with the Clerk of

9    the Court.

10         I granted that application based upon the content of

11   that letter, without prejudice to any motion any party might

12   make or any nonparty might make to unseal that document.

13         I also noted at that time and note again now, that it

14   is my understanding that there is a similar document that has

15   been filed under seal in another stage of this prosecution,

16   and that the application to unseal that document has been

17   filed, and motion has been made with respect to it, and it is

18   pending before Judge Dearie now.

19         And that perhaps the most efficient way for the matter

20   to be brought before the Court, if any party desires to do so,

21   or nonparty desires to do so, would be by joining in that

22   motion -- but of course, a separate motion could be filed, as

23   well.

24         Is there anything further before we adjourn?

25         MR. KNOX:  Not from the Government, Your Honor.

LISA SCHMID, CCR, RMR
OFFICIAL COURT REPORTER

1          MR. MARINACCIO:  Not from the defense, Your Honor.

2          THE COURT:  Again.  We are, indeed, adjourned.

3          (Proceedings concluded.)

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25